UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ANNETTE LOGAN, | No. CV 08-7944-PLA |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on December 8, 2008, seeking review of the Commissioner's denial of her applications for Disability Insurance Benefits and Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on January 15, 2009, and February 3, 2009. The parties filed a Joint Stipulation on August 19, 2009, that addresses their positions concerning the disputed issue in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## **BACKGROUND**

Plaintiff was born on August 8, 1954. [Administrative Record ("AR") at 53, 57, 61.] She has a high school education and has attended some college [AR at 72, 343-44], and has past relevant work experience as an eligibility clerk. [AR at 67, 79, 81, 114, 344.]

Plaintiff protectively filed her application for Supplemental Security Income payments on September 17, 2004, and filed her application for Disability Insurance Benefits, for Medicare only, on April 14, 2005, alleging that she is unable to work due to hypertension, cholesterol, blurry vision, and headaches. [AR at 17, 53-60, 65-66.] Plaintiff amended her alleged onset date of disability to September 17, 2003. [AR at 342; Joint Stipulation ("JS") at 2.][1] After her applications were denied initially and upon reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 27-32, 34-37, 40.] A hearing was held on October 18, 2006, at which plaintiff appeared with counsel and testified on her own behalf. [AR at 17, 340-55.] Testimony was also received from a vocational expert. [AR at 355-58.] On October 31, 2006, the ALJ issued an unfavorable decision. [AR at 17-24.] Plaintiff requested a review of the hearing decision. [AR at 11.] When the Appeals Council denied plaintiff's request for review on October 8, 2008, the ALJ's decision became the final decision of the Commissioner. [AR at 5-8.] This action followed.

## III.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

---

[1] In her disability application, plaintiff alleged that she has been disabled since September 1, 1989 [AR at 53, 57, 85], but that she has been unable to work due to her conditions since January 26, 2000. [AR at 66.]

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## **THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

**A.    THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or

1 equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.  THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff had not engaged in any substantial gainful activity since September 17, 2003, the amended alleged onset date of the disability.[2] [AR at 19.] At step two, the ALJ concluded that plaintiff has the "severe" impairments of hypertension and tachycardia. [AR at 20.] At step three, the ALJ determined that plaintiff's impairments do not meet or equal any of the impairments in the Listing. [Id.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[3] "to perform light exertion work [[4]] with occasional

---

[2] The ALJ also determined that plaintiff is insured for Disability Insurance Benefits for Medicare purposes through March 31, 2006. [AR at 19.] The ALJ acknowledged that plaintiff has worked as an in-home provider since the alleged onset of disability. [AR at 19-20.] However, the ALJ found that since she only worked at most 37.9 hours per month at a rate of $8.50 per hour, this employment did not meet substantial gainful activity levels since her alleged onset date. [Id.]

[3] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[4] Light work is defined as work involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and requiring "a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg

climbing, balancing, stooping, kneeling, crouching and crawling." [Id.] At step four, the ALJ concluded that plaintiff was capable of performing her past relevant work, which the vocational expert identified as an administrative clerk. [AR at 24.] Accordingly, the ALJ determined that plaintiff is not disabled. [Id.]

## V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ failed to provide clear and convincing reasons for rejecting plaintiff's subjective pain and limitations. [JS at 4-8,13-14.] As set forth below, the Court agrees with plaintiff, and remands the matter for further proceedings.

**PLAINTIFF'S CREDIBILITY**

Plaintiff contends that the ALJ failed to properly consider plaintiff's testimony and failed to make proper credibility findings. [JS at 4-8, 13-14.] Specifically, plaintiff argues that the ALJ did not provide clear and convincing reasons for discounting her subjective complaints and limitations related to her headaches.

Whenever an ALJ discredits a claimant's testimony regarding subjective symptoms, including degree of pain and functional limitations, the ALJ must make explicit credibility findings. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990); see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993) (if the ALJ does not accept a claimant's testimony, he must make specific findings rejecting it). The ALJ can reject a claimant's allegations "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so." Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003); see Lester, 81 F.3d at 834 (the ALJ must provide clear and convincing reasons for discrediting a claimant's testimony as to severity of symptoms when there is medical evidence of an underlying impairment). The factors to be considered in weighing a claimant's credibility include: (1) the claimant's reputation for truthfulness; (2) inconsistencies

---

controls." 20 C.F.R. §§ 404.1567(b), 416.967(b).

either in the claimant's testimony or between the claimant's testimony and her conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also 20 C.F.R. §§ 404.1529(c), 416.929(c). "It is not sufficient for the ALJ to make only general findings." Dodrill, 12 F.3d at 918. Absent evidence showing that a plaintiff is malingering, the ALJ must clearly identify evidence in the record undermining the plaintiff's testimony to properly discredit his alleged limitations. See id.; see also Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.") (quoting Lester, 81 F.3d at 834). If properly supported, the ALJ's credibility determination is entitled to "great deference." See Green v. Heckler, 803 F.2d 528, 532 (9th Cir. 1986).

As the record contains no evidence of malingering by plaintiff,[5] the ALJ was required to justify his credibility determination with clear and convincing reasons. See Benton, 331 F.3d at 1040. In the decision, despite finding that plaintiff's medical condition would reasonably produce some pain, the ALJ found plaintiff's "statements concerning the intensity, persistence and limiting effects" of her symptoms to be "not entirely credible." [AR at 23.] The ALJ discounted plaintiff's subjective complaints of pain and resulting limiting effects because: (1) there was a lack of objective medical evidence corroborating plaintiff's symptoms; (2) she would have "received more aggressive treatment and . . . been fully compliant with treatment" if she experienced the disabling problems alleged; and (3) plaintiff's daily activities were not limited to the extent one would expect given plaintiff's complaints of disabling symptoms and limitations. [AR at 23-24.] As discussed below, the Court has considered the ALJ's reasons for discounting plaintiff's subjective testimony, and finds that they are neither clear nor convincing.

---

[5] The ALJ made no finding that plaintiff was malingering, nor does the evidence suggest plaintiff was doing so.

6

### 1. CORROBORATING OBJECTIVE MEDICAL EVIDENCE

First, the ALJ determined that plaintiff's testimony concerning her limitations was incredible, because he found plaintiff's complaints and limitations to be "out of proportion to the objective findings" reflected in her medical record. [AR at 22-23.] While it cannot provide the only basis to reject a claimant's credibility, the absence of objective medical evidence to support a plaintiff's subjective complaints is a factor that an ALJ can consider in discrediting symptom testimony. See Bunnell v. Sullivan, 947 F.2d 341, 346-47 (9th Cir. 1991) (an "adjudicator may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence.") (emphasis added); see also Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997) ("because a claimant need not present clinical or diagnostic evidence to support the severity of his pain . . . a finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of his pain"); Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (while medical evidence alone cannot discredit testimony as to pain, it is one factor which the ALJ is permitted to consider). "Symptoms can sometimes suggest a greater severity of impairment than is demonstrated by objective and medical findings alone . . . [D]irect medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced . . . The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints." Luna v. Bowen, 834 F.2d 161, 165 (10th Cir. 1987) (quoting Polaski v. Heckler, 751 F.2d 943, 948 (8th Cir. 1984), vacated and remanded on other grounds, 476 U.S. 1167, 106 S. Ct. 2885, 90 L. Ed. 2d 974 (1986)).

In describing her physical problems that make her unable to work, plaintiff testified about how she suffers from, among other things, vascular headaches that she gets approximately twice a month, and migraine headaches that she gets about two or three times a month. [AR at 347-51.] Plaintiff testified that her vascular headaches last "a few hours;" she takes medication that "doesn't control" the headaches, but enables her to "function a little bit" by lessening the pain. [AR at 350.] Plaintiff also testified that her migraine headaches can last as long as two weeks; the medication

she takes "really makes [her] drowsy" and doesn't eliminate her pain, but "makes it where it's bearable." [AR at 350-51.] Plaintiff explained that she is unable to pursue substantial gainful employment with her headaches, as she would not be able to work two weeks without missing work. [AR at 351.] Plaintiff explained that she might have to miss as much as a week of work for each migraine and half a day of work for each vascular headache. [Id.] Plaintiff also testified that she must attend approximately two medical appointments each month, which take up her whole day, and would have to request a day off from work for each appointment.[6] [AR at 352-53.] The ALJ acknowledged that plaintiff's medical records reflect her history of hypertension with complaints of headaches, among other medical problems. [AR at 22; see, e.g., AR at 328.] However, the ALJ discredited the extent of plaintiff's subjective limitations by finding that the objective medical evidence was not "compatible with [her] alleged inactivity and inability to function." [AR at 23.] In so concluding, the ALJ referenced some, but not all, relevant parts of plaintiff's medical records pertaining to her headaches, and found that "the records indicate that [plaintiff's] . . . headaches respond to Neurontin," a prescription medication. [AR at 22.] The record does not adequately support this conclusion.

The record indicates that plaintiff's headaches were not as responsive to Neurontin as the ALJ suggested, since plaintiff continued to suffer from headaches while she was taking the medication. As plaintiff asserts, "[t]his is not a case where headaches are alleged but reported infrequently." [JS at 6.] Instead, plaintiff's medical records reveal many medical appointments where plaintiff repeatedly complained of headaches during the period in which her doctors treated her with Neurontin. [AR at 163-64, 166, 169-70, 173-74, 178-79, 190-91, 193, 199, 201, 233, 255,

---

[6] The vocational expert testified that a person holding an administrative clerk position (the occupational title for plaintiff's past relevant work as an eligibility clerk), or various other light work positions, would not be able to sustain employment if he or she took two personal days each month for doctor appointments. [AR at 356-57.] The vocational expert also found that it would be "borderline" for such an individual to sustain employment while missing "half a day of work approximately two times per month" due to vascular headaches, and "that probably over time [the employee] would not retain that employment." [AR at 358.] If such a pattern repeated itself "[m]onth after month," the vocational expert found that "eventually it would result in termination." [Id.]

257-58, 261, 263, 265, 267, 279-81, 313, 318, 321, 328, 330.] Some of the records referenced by the ALJ in fact support plaintiff's assertion that she continued to suffer from headaches and that Neurontin did not completely alleviate her pain. [AR at 20-22, 163 (August 5, 2005), 174 (December 14, 2004), 191 (September 3, 2004), 193 (June 5, 2004), 199 (March 4, 2004), 201 (February 9, 2004), 265 (December 14, 2005).] Additionally, the ALJ referenced plaintiff's September 8, 2004, CT scan of her brain, which plaintiff underwent due to her headaches, and noted that the examination "showed nondescript atrophic changes presumably microvascular and microischemic." [AR at 21, 233.] The CT results, however, also include "mild atrophic changes involving the cerebelli vermis and the sylvian fissures. Some frontal polar and extreme vertex atrophy is present as well." [AR at 233.] The ALJ did not analyze how such objective medical evidence of brain atrophy impacted on plaintiff's credibility regarding her subjective limitations.

In finding that the medical evidence did not corroborate plaintiff's limitations, the ALJ misinterpreted some parts of plaintiff's medical record. For example, the ALJ incorrectly asserted that plaintiff "had no complaints" at her March 9, 2005, medical appointment. [AR at 22, 170.] Yet the referenced medical record indicates that plaintiff actually complained of a headache and said her pain level that day was five out of ten. [AR at 170.] Similarly, the ALJ stated that a medical record for May 5, 2005, revealed that plaintiff "had no complaints," even though the record actually shows that plaintiff reported that her level of pain was four out of ten. [AR at 22, 166.] The ALJ also stated that from August 5, 2005, through June 2006, the medical records only showed plaintiff complained of "headaches on occasion." [AR at 22.] In fact, the medical records show notations regarding plaintiff's headaches during at least eight of plaintiff's medical appointments during that ten month period.[7] [AR at 255, 257, 258, 263, 265, 267, 279, 281.] The record continues to

---

[7] On August 12, 2005, the record reflects that plaintiff complained of a headache and had a level of pain of five out of ten. [AR at 281.] On August 26, 2005, plaintiff had a level of pain of six out of ten, and the record notes plaintiff's vascular headaches. [AR at 279.] On December 8, 2005, the record notes that plaintiff had a level of pain of four out of ten due to a headache and that plaintiff was prescribed Vicodin for her headaches. [AR at 267.] On December 14, 2005, the record notes that plaintiff complained of headaches, had a level of pain of five out of ten, and that her medication "somewhat relieved" her headaches. [AR at 265.] On December 15, 2005, plaintiff complained of headaches and a level of pain of six out of ten. [AR at 263.] On February 1, 2006,

1  document plaintiff's complaints and treatment regarding her headaches throughout the rest of
2  2006 and the beginning of 2007. [AR at 309, 313, 321, 328, 330.] When properly supported by
3  substantial evidence in the record, the ALJ's credibility determination is entitled to great deference
4  by this Court, as the Court's "role is not to second-guess that decision." See Fair v. Bowen, 885
5  F.2d 597, 603 (9th Cir. 1989); see also Morgan v. Commissioner of Social Sec. Admin., 169 F.3d
6  595, 600 (9th Cir. 1999). In this case, however, the ALJ failed to support his reasoning with
7  substantial evidence, as he misinterpreted portions of the record that actually contradicted his
8  finding of a lack of corroborating medical evidence, and downplayed the occasions on which
9  plaintiff complained of headaches.

10       To support his finding of a lack of corroborating objective medical evidence, the ALJ also
11 cited records of medical appointments during which plaintiff said she was not in pain that day [AR
12 at 21-22, 139, 164, 168, 171, 196] and that her medication somewhat helped her headaches [AR
13 at 22, 265.] To properly reject a plaintiff's alleged limitations, the ALJ must provide reasoning
14 "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily
15 discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995). In the
16 decision, the ALJ did not provide specific reasoning to clearly explain how the cited medical
17 records discredited plaintiff's testimony. The ALJ did not analyze how plaintiff's failure to complain
18 about headaches at every appointment made her alleged limitations incredible, especially since
19 plaintiff testified that she experienced vascular headaches approximately twice a month and
20 migraine headaches two or three times a month. [AR at 349-50.] The ALJ also did not explain
21 why evidence that plaintiff's medication "somewhat relieved" her headaches made her testimony
22 about her limitations less than credible. [AR at 22, 265.] Instead, the records cited by the ALJ
23 appear to be consistent with plaintiff's testimony that her medication "doesn't control" her
24 headaches, but reduces the pain to "where it's bearable," and enables her to "function a little bit."

---

plaintiff complained of headaches with a pain level of five out of ten. [AR at 258.] On February 28, 2006, plaintiff complained of pain on the side of her face and head with a pain level of six out of ten. [AR at 257.] On April 10, 2006, the record notes that plaintiff was still suffering from vascular headaches for which she was taking Neurontin. [AR at 255.]

10

[AR at 350-51.] Since the ALJ failed to explain how the objective medical evidence discredits plaintiff's testimony, the Court cannot find that the ALJ did not arbitrarily dismiss plaintiff's credibility.

Given the extent of the medical evidence reflecting plaintiff's repeated complaints, examinations, and treatment for headaches, some of which was inaccurately or not at all reflected in the ALJ's decision, the Court finds that the ALJ failed to provide clear and convincing reasons for discounting plaintiff's subjective symptom testimony based on the objective medical evidence.

### 2.  AGGRESSIVE TREATMENT AND COMPLIANCE WITH TREATMENT

Next, the ALJ discredited plaintiff's testimony because he found that her "alleged limitations are not consistent with her treatment." [AR at 23.] Specifically, the ALJ found that the record does not show that plaintiff ever told her doctors about any of her medications' side effects, and that "none were listed by her providers."[8] [AR at 23.] Additionally, the ALJ found that the record indicates that plaintiff "was not always compliant with her medications" [AR at 23, 125, 171, 199, 349], and concluded that "[i]t is reasonable to assume that if [plaintiff] were experiencing the disabling problems alleged, she would have received more aggressive treatment and she would have been fully compliant with treatment." [AR at 23-24.]

Contrary to the ALJ's finding that plaintiff never discussed medication side effects with her doctors, the record contains information that her doctor changed her medication to address at least some of the side effects. [AR at 267.] During plaintiff's hearing, the ALJ asked plaintiff if she ever talked to her doctors about taking medications that would not make her drowsy. [AR at 348.] Plaintiff replied that she had not, as her doctors had changed her medication several times, and were considering additional changes, in an effort to control her blood pressure and cholesterol. [Id.] Given the amount of medication she takes, plaintiff explained, her doctors were "having a little problem[] with controlling both" her cholesterol and high blood pressure. [AR at 348.] Consistent with this assertion, the record reveals that plaintiff's doctor did alter some of her medications,

---

[8]  The ALJ also cited aspects of plaintiff's medical treatment that do not apply to plaintiff's complaints and alleged limitations associated with her vascular and migraine headaches. [AR at 23.]

11

because they had the adverse side effect of raising her blood pressure. [AR at 267.] Therefore, although the record does not show that plaintiff told her doctors about some of her side effects, such as drowsiness, there is evidence that plaintiff's medication regime was in flux, and that doctors were addressing some of her medications' other adverse side effects.

There is some indication in the record that, on at least a few occasions, plaintiff failed to take her medications as prescribed. [AR at 21-23, 125, 171, 199, 349.] Indeed, during the hearing, plaintiff admitted that she does not always take her medication when she is caring for her brother, because it makes her too tired. [AR at 348-49.] An ALJ may take into consideration noncompliance with prescribed medical treatment when finding a plaintiff incredible. See Bunnell, 947 F.2d at 346 (noncompliance with prescribed course of treatment is a relevant consideration in assessing credibility). However, this reason is not sufficiently clear and convincing to negate the entirety of plaintiff's subjective complaints here. In the decision, the ALJ noted only three occasions where plaintiff reported during her medical appointments that she had not taken her prescribed medications before attending her appointments. [AR at 21-23, 125, 171, 199.] However, the record also contains information about dozens of other appointments where plaintiff reported no such lapse. This selective analysis of the record by the ALJ is improper, as he cannot pick and choose from the evidence in order to support his conclusion of incredibility. See Robinson v. Barhnhart, 366 F.3d 1078, 1083 (10th Cir. 2004) ("The ALJ is not entitled to pick and choose from a medical [record], using only those parts that are favorable to a finding of nondisability") (citing Switzer v. Heckler, 742 F.2d 382, 385-86 (7th Cir. 1984)). Thus, by referencing only three appointments out of dozens where plaintiff reported she had not taken her prescribed medication, the ALJ's rejection of plaintiff's credibility based on plaintiff's occasional noncompliance does not withstand scrutiny.

The ALJ's characterization that plaintiff did not pursue aggressive treatment due to her failure to report all of her medications' negative side effects and her occasional noncompliance with her medication is not wholly accurate. The record documents dozens of appointments from February 2004 to January 2007, where plaintiff complained about and was treated for her headaches. [AR at 163-64, 166, 169-70, 173-74, 178-79, 190-91, 193, 199, 201, 233, 255, 257-

58, 261, 263, 265, 267, 279-81, 313, 321, 328, 330.] The record shows that plaintiff continuously sought treatment for her headaches, underwent treatments and a CT scan, and took a variety of prescription medications. The ALJ did not clearly and convincingly explain in what way plaintiff's treatment for her headaches was not sufficiently "aggressive," and therefore, the ALJ's rejection of plaintiff's credibility based on her treatment was improper.

### 3. PLAINTIFF'S DAILY ACTIVITIES

The ALJ also discounted plaintiff's credibility regarding her subjective symptoms and limitations because she has worked as an in-home provider for her brother since September 17, 2003, working between 20.2 and 37.9 hours a month. [AR at 24, 345-46.] Generally speaking, if a claimant has the ability to perform activities "that involve many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent [him] from working." See Fair, 885 F.2d at 603. Engaging in some household chores or activities, however, is not necessarily inconsistent with a finding of disability. See Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (benefits awarded on appeal to a claimant experiencing constant leg and back pain, despite the claimant's ability to cook and wash dishes); see also Cooper v. Bowen, 815 F.2d 557, 561 (9th Cir. 1987) (stating that ability to assist with some household tasks was not determinative of disability) (citing Smith v. Califano, 637 F.2d 968, 971 (3rd Cir. 1981) (disability claimant need not "vegetate in a dark room excluded from all forms of human and social activity")). The ALJ found that for less than 10 hours each week, plaintiff "fixes [her brother's] meals, does his laundry, makes his bed, applies lotion on his legs, goes to doctor's appointments with him and does the grocery shopping." [AR at 24, 346-47.] The ALJ acknowledged that plaintiff's part-time work "was not performed at substantial gainful activity levels," but still found that it undermined plaintiff's credibility by "indicat[ing] that she is not as impaired and functionally limited as she alleges." [AR at 24.]

The Court is not persuaded that plaintiff's ability to help her brother less than 10 hours per week by doing light housework, attending appointments, fixing meals, going grocery shopping, and applying lotion [AR at 346-47] supports the ALJ's finding that plaintiff could sustain gainful employment, because the ability to do these limited activities does not necessarily translate into

an ability to do activities that are "transferable to a work setting." See Fair, 885 F.2d at 603 (noting that a claimant is not required to be "utterly incapacitated" in order to be disabled and that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication"; see also Smolen v. Chater, 80 F.3d 1273,1284 n.7 (9th Cir. 1996). To properly discredit a plaintiff's credibility based on her daily activities, the ALJ must find that plaintiff "is able to spend a *substantial part* of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) (quoting Morgan, 169 F.3d at 600) (emphasis in original); see also Nelson v. Astrue, 610 F.Supp.2d 1070, 1076 (C.D. Cal. 2009). The ALJ made no findings that plaintiff is capable of performing these activities repeatedly or for substantial periods of time without rest, and did not explain how plaintiff's activities while helping her brother part-time are transferable to the workplace. See Fair, 885 F.2d at 603. Nor did the ALJ provide an explanation as to how plaintiff's ability to perform certain activities is inconsistent with her claimed limitations. See Reddick, 157 F.3d at 722 (an ability to take part in some household tasks bears on a claimant's credibility only to the extent that the level of activity is in fact inconsistent with the alleged limitations). The Court therefore finds that the ALJ failed to provide clear and convincing reasons, based upon plaintiff's activities, for discrediting plaintiff's alleged limitations.

"While an ALJ may certainly find testimony not credible and disregard it . . ., [courts] cannot affirm such a determination unless it is supported by specific findings and reasoning." Robbins v. Social Security Administration, 466 F.3d 880, 884-85 (9th Cir. 2006). The ALJ erred by failing to provide clear and convincing reasons for discounting plaintiff's subjective testimony. Remand is warranted.

## VI.

## **REMAND FOR FURTHER PROCEEDINGS**

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th

1 Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate in order to reconsider plaintiff's credibility concerning her limitations pertaining to her headaches. The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: September 16, 2009

                          PAUL L. ABRAMS
            UNITED STATES MAGISTRATE JUDGE